UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

Wayne R. Schmitt,           Case No. 18-21755-beh

Debtor.           Chapter 7

**DECISION OVERRULING TRUSTEE'S OBJECTION
TO DEBTOR'S EXEMPTION**

What Wayne Schmitt faced was no Johnny Cash song. Not wanting to remain in jail, 74-year old Schmitt made a pre-petition payment to satisfy a bench warrant. Shortly thereafter, the Chapter 7 trustee objected to debtor Schmitt's exemption of the payment, arguing that the payment was voluntary. Schmitt contended that the choice between payment or loss of liberty was involuntary. As described more fully below, the Court overrules the trustee's objection.

**FACTUAL BACKGROUND**

On March 1, 2018, the debtor filed a Chapter 7 bankruptcy petition. He filed his schedules on March 15, 2018. *See* CM-ECF Doc. No. 9. Schedule A/B listed a preference payment of $3,716 made to Wolfinger Water & Backhoe Service, LLC ("Wolfinger") on or about March 1, 2018, and Schedule C exempted the payment under the "wildcard" exemption of 11 U.S.C. section 522(d)(5).[1]

The Chapter 7 trustee objected to the debtor's exemption of the preference paid to Wolfinger, asserting that the debtor may not exempt funds voluntarily remitted to a creditor during the preference period. CM-ECF Doc. No. 12. The trustee cited Schmitt's testimony at the meeting of creditors that

---

[1] Schedule E/F Line 4.23 lists a $3,500 debt incurred February 22, 2016 for goods and services from Wolfinger.

he made the payment involuntarily from funds loaned to him by a relative to satisfy a judgment and to cancel the bench warrant entered in Wolfinger's small claims action against him. *Id.* According to the public docket in the small claims action, available via an online database commonly known as CCAP (Consolidated Court Automation Programs), the bench warrant was canceled on February 28, 2018 due to payment in full of $3,713.38. The funds to make that payment came from several Calumet County Jail ATM loans from Alyce Head totaling $4,016. CM-ECF Doc. No. 12. On May 29, 2018, the debtor filed Amended Schedule E/F, which added a non-priority unsecured claim of Tom and Alyce Head in the amount of $4,016, incurred February 26, 2018, "borrowed $ to pay warrant." CM-ECF Doc. No. 16, Line 4.22.

At a hearing on the trustee's objection to the debtor's exemption, the Court requested that the parties submit affidavits with additional facts or case citations. In response, the trustee filed an affidavit attaching the CCAP Case Summary for Calumet County Case Number 2016SC000082, Wolfinger Water & Backhoe Service LLC vs. Wayne Schmitt, which includes the following pertinent entries:

> 02-28-2018 [**Event:**] Warrant/Capias/Commitment canceled for Schmitt, Wayne
>
> **Additional text:**
> ARREST, judgment paid in full in the amount of $3,713.38
>
> 02-28-2018 [**Event:**] Cash bond posted
> [**Amount:**] $3,713.38
>
> . . .
>
> 10-02-2017 [**Event:**] Bench Warrant Civil Issued for Schmitt, Wayne
> [**Court official:**] Froehlich, Jeffrey S.
>
> **Additional text:**
> Pay judgment in full in the amount of $3,713.38 OR provide to Atty Wagener 2015 & 2016 returns, all bank account statements, property tax bills for all property owned individually and all corporate documents that the DE is a shareholder, partner or member of.

CM-ECF Doc. No. 19, at 3–4.

The debtor filed a copy of the October 2, 2017 Bench Warrant for Wayne Schmitt, which states:

> **TO ANY LAW ENFORCEMENT OFFICER:**
> Arrest and deliver to the sheriff the above named person because this person
>
> . . .
>
> _x_ Failed to: <u>comply with the Order dated June 29, 2017 and specifically failed to produce tax returns for the years of 2015 and 2016, all bank account statements, property tax bills for all property owned individually and all corporate documents that the defendant is a shareholder, partner or member of.</u>
>
> This person may be released upon completion of [any] of the following conditions:
>
> . . .
>
> _x_ Paying the amount owed on the judgment $<u>3,713.38.</u>
>
> . . .
>
> _x_ Performing the following conditions as authorized by the court: (All conditions under this section must specifically [*sic*] authorized by the court.) Deliver to Attorney Andrew Wagener, Bollenbeck Fyfe, S.C., W6260 Communication Court, Appleton, WI your <u>tax returns for the years of 2015 and 2016, all bank account statements, property tax bills for all property owned individually and all corporate documents that the defendant is a shareholder, partner or member of.</u>

CM-ECF Doc. No. 21, at 5–6.

Mr. Schmitt also filed his own affidavit, which explains that at 74 years of age he suffers from various health issues. Affidavit of Wayne Schmitt, CM-ECF Doc. No. 21, ¶ 8. Schmitt's affidavit describes how two Calumet County Sheriff Deputies arrived at his home unannounced on February 26, 2018 and took him into custody with a bench warrant based on a contempt order. Once at the jail, they informed him that they wanted "his body or his money," provided him only the first page of the warrant, and gave him no other alternatives to satisfy the warrant. *Id.* at ¶¶ 3–5. Mr. Schmitt attested that he had previously mailed the required documents to satisfy the warrant and did not realize that the documents had not been received; consequently, he saw no other alternative to secure his release from jail than to pay the required amount. *Id.* at ¶¶ 6–7.

The trustee did not offer any facts to refute Mr. Schmitt's prior efforts to comply with the June 29, 2017 state court order to turn over documents.

At the request of the Court, on October 4, 2018, the parties submitted a stipulation with additional facts to supplement the record. According to that stipulation, the trustee had sent a demand letter to Wolfinger on September 12, 2018, requesting turnover of the $3,716 it received from the debtor. Neither the trustee nor Mr. Schmitt had recovered the payment, as of October 4. *See* CM-ECF Doc. No. 26.[2]

## THE PARTIES' ARGUMENTS

The trustee asserts that a debtor may not claim an exemption in an avoidable preference if the debtor paid a debt voluntarily, because § 522(h) allows a debtor to avoid a transfer of property only if two conditions are met: (1) the transfer would be avoidable by the trustee and the trustee does not attempt to avoid the transfer; and (2) the debtor could have exempted the property under § 522(g), which allows a debtor to exempt property recovered by the trustee only if the debtor did not transfer the property voluntarily. The trustee also argues that a voluntary transfer is one accomplished of the debtor's own volition, as he asserts occurred here, because the creditor merely exercised its rights pursuant to ordinary, duly entered court orders. The trustee urges the Court to adopt a bright-line definition of a voluntary transfer as one made of the debtor's own volition in the absence of fraud or other unlawful conduct by a creditor.

Conversely, debtor Schmitt argues that the transfer of $4,016[3] is avoidable because all requirements of 11 U.S.C. § 552(g) are satisfied and the

---

[2] Either the trustee or the debtor will continue pursuing the estate's right to recover the preference payment following issuance of this decision. CM-ECF Doc. No. 26, ¶ 9.

[3] In his response brief, the debtor claims that the total amount "paid" to free him from jail, after fees and costs for processing (over $300 in jail ATM fees), was $4,016, and that "the transfer of $4016 is avoidable" under section 552(g). But it is only the amount transferred *to the creditor*—$3,716—that is a potentially avoidable preference payment. The debtor provides no authority establishing his ability to recover from Wolfinger (and then exempt) any extra costs and fees Ms. Head incurred (on his behalf) in withdrawing money from the jail ATM. In any event, the amount of the debtor's claimed exemption is $3,716, so the Court considers only that amount.

transfer was not voluntary. The transfer, he asserts, involved a heavy dose of coercion and was not of the debtor's own free will. Given the limited options of paying on the bench warrant or remaining in jail, the payment to satisfy the warrant should not be considered a voluntary act. CM-ECF Doc. No. 21.

## DISCUSSION

The trustee's objection to the debtor's exemption of the payment implicates several subsections of 11 U.S.C. section 522 and Federal Rule of Bankruptcy Procedure 4003, both of which govern a debtor's exemptions from property of the estate. The trustee bears the burden of proving that the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c); *see also In re Hill*, 566 B.R. 891 (Bankr. W.D. Mich. 2017) (objecting party has the burden of demonstrating that a transfer was voluntary, at which point the burden shifts to the debtor to demonstrate that the transfer was involuntary, but the ultimate burden of proof remains with the objecting party).

The trustee and the debtor focus their arguments on whether the payment was voluntary, and therefore capable of being exempted under sections 522(h) and (g). Those two sections of the Code provide:

> The debtor may avoid a transfer of property of the debtor or recover a setoff **to the extent that the debtor could have exempted such property under subsection (g)(1)** of this section if the trustee had avoided such transfer . . . .

11 U.S.C. § 522(h) (emphasis added).

> [T]he debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> > (1)(A) **such transfer was not a voluntary transfer of such property by the debtor**; and
> >
> > (B) the debtor did not conceal such property . . . .

11 U.S.C. § 522(g) (emphasis added).

Before considering whether the payment was voluntary, however, the Court first must consider a more fundamental question: whether the payment

is property of the estate, because only property of the estate may be claimed as exempt. *See* 11 U.S.C. § 522(b)(1) ("Notwithstanding section 541 of this title, an individual debtor may exempt from *property of the estate* . . . .") (emphasis added); *Heintz v. Carey (In re Heintz),* 198 B.R. 581, 586 (B.A.P. 9th Cir. 1996) (It is a "well settled rule that property cannot be exempted unless it is first property of the estate.") (citing *Owen v. Owen,* 500 U.S. 305, 308 (1991)).

Property of the estate is broadly defined to include all property interests of the debtor "as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Code also provides several means by which the estate may acquire property after the case is filed. For example, under section 541(a)(3), property that the debtor does not possess on the date of filing may later *become* property of the estate if the trustee recovers the property using his avoidance powers— including the power to avoid preferential transfers under section 547. *See* 11 U.S.C. § 541(a)(3) (property of the estate includes "[a]ny interest in property that the trustee recovers under section . . . 550 . . . of this title," which allows recovery of transfers avoided under section 547).

In this case, the debtor did not own or possess the payment itself on the filing date. And at least as of October 4, 2018, the payment had not yet been recovered, although the trustee has begun the process by making a demand for it. Because the debtor cannot exempt the payment until it becomes property of the estate under section 541(a)(3), the debtor's claimed exemption of the payment itself appears premature. *See, e.g., In re Gillenwater*, 479 B.R. 711, 716 (Bankr. W.D. Va. 2012); *In re Bethea,* 275 B.R. 127, 130–32 (Bankr. D.D.C. 2002); *In re Woodin,* 294 B.R. 436 (Bankr. D. Conn. 2003).

Despite the express limitation on the property interests a debtor may claim as exempt (and when), the Court recognizes a lack of clarity, and even conflicting advice from lower courts, about whether a trustee must object to an exemption of even non-estate property, to prevent allowance of the exemption by default. *Compare Bethea*, 275 B.R. at132 ("[A] trustee should not be put to the burden of objecting to an exemption of property that was transferred

prepetition and that is not yet estate property. . . . Once the trustee avoids a transfer, the debtor may amend her exemptions . . . and trigger a deadline for objection by the trustee under Fed.R. Bankr. P. 4003(b)."), *and Woodin*, 294 B.R. at 439 ("The debtor's purported exemption of property that is not property of the estate is a nullity, not requiring a Rule 4003(b) objection."), *with In re Ealy*, 355 B.R. 685, 689 (Bankr. N.D. Ill. 2006) (the debtor acquired by default an exemption in unrecovered prepetition garnished wages, even though she was not entitled to exempt the wages under state law, due to a lack of any timely objection to her exemption).

Based on this uncertainty, the trustee understandably took the "safer approach" here and filed an objection. *See Woodin*, 294 B.R. at 440 ("'[T]rustees risk costly delays and the uncertainty of litigation and appeals when they assume that failure to object to an imprecise and unsupported exemption claim will not result in automatic exemption . . . . By far the safer approach would be for trustees to take a conservative and skeptical view of exemption claims, and refuse to accept any claim of exemption that is not clearly legitimate on its face.'") (quoting *In re Clark*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001)). To resolve the trustee's objection, and also to provide guidance to these parties in pursuing the contemplated avoidance action under section 547, the Court will determine whether the debtor would be entitled to exempt the payment *if* the transfer is avoided, and the property brought into the estate (as either the trustee or debtor intend to do).

As noted above, the amount of the claimed exemption is not at issue.[4] Mr. Schmitt and the trustee acknowledge that the analysis of whether the debtor may exempt the property hinges on whether the payment was voluntary. The Bankruptcy Code does not define "voluntary," and there is little legislative

---

[4] Section 522(d)(5), under which the debtor claimed the payment as exempt, allows a debtor to exempt "[t]he debtor's aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the exemption provided under paragraph (1) of this subsection."

history in this regard. As one bankruptcy court in the Western District of Wisconsin has explained:

> The Bankruptcy Code is silent about what constitutes a voluntary transfer under 11 U.S.C. s 522(g). The legislative history of this section gives one example of an involuntary transfer (the fixing of a judicial lien), but provides no further illumination.
>
> Voluntary is defined in Black's Law Dictionary as:
>
>> Unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself. Done by design or intention, purpose, intended. Produced in or by an act of choice. Resulting from choosing. The word, especially in statutes often implies knowledge of essential facts. Black's Law Dictionary 1746-47 (Rev. 4th ed. 1981). (Citations omitted.)
>
> . . .
>
> The one example given in the legislative history of 11 U.S.C. s 522(g) of an involuntary transfer (the fixing of a statutory lien) indicates that Congress intended to allow recovery of only those transfers beyond debtor's personal control.

*Matter of Huebner*, 18 B.R. 193 (Bankr. W.D. Wis. 1982) (wage assignment to avoid collection efforts by creditor, as distinct from garnishment, was voluntary).

While the Code does not define the term, bankruptcy courts "have generally concluded . . . that an involuntary transfer 'occurs when . . . property is transferred by operation of law, such as by means of an execution of judgment, repossession, or garnishment.'" *In re Hill*, 566 B.R. at 894 (citations omitted). *See also Via v. Colonial Am. Nat'l Bank (In re Via)*, 107 B.R. 91 (Bankr. W.D. Va. 1989) (concluding that payment made in response to legal coercion is not voluntary, issuance of garnishment summons resulted in debtor making coerced payments due to threat of losing her wages and the inherent threat to her employment through legal compulsion). In *Via*, the garnishment was the result of a legal judgment, and noncompliance (if possible) could mean loss of employment. To avoid withholding of her wages, the debtor took a loan from her mother to pay the garnishee creditor. She later sought to recover that payment as an involuntary transfer. The bankruptcy court agreed with the debtor that the pending loss of her wages was involuntary, by operation of law.

*Via* is somewhat analogous to Mr. Schmitt's circumstances, because the debtor took an immediate loan to satisfy the debt, which arose by operation of law, to avoid harsher impending consequences.

The facts of *Hill* also are somewhat analogous to those in the present case. Mr. Hill had a state court judgment entered against him in 2011. It went unpaid, and in 2016, a court agent more like a bounty hunter, armed with a seizure order, arrived unannounced to seize the debtor's property. The agent began the encounter by threatening to shoot the debtor's dog. 566 B.R. at 892. To avoid that extreme measure as well as the immediate seizure of other property on his premises, Mr. Hill arranged with family members to gather some cash and pay several thousand dollars to the court agent. The court agent remained with Mr. Hill until the money was obtained. Not long after, Mr. Hill filed for bankruptcy, and claimed the payment (which he had since recovered) as exempt. The trustee objected to the exemption as a preferential transfer, and argued that because the debtor intentionally paid the funds to the court officer, the transfer was voluntary. The *Hill* court disagreed with the trustee, concluding that the transfer of funds by the debtor to a court officer, and ultimately to the judgment creditor, occurred by operation of law, and was therefore involuntary for purposes of section 522(g). *Id.* at 896.

In another similar case not cited by the parties, an Oregon bankruptcy court addressed a Chapter 7 trustee's objection to an exemption claimed in an $8,500 bail bond deposit made to the county sheriff's office. *In re Yarber*, 522 B.R. 328 (Bankr. D. Or. 2014). The trustee argued that, by voluntarily transferring the otherwise exempt deposit, the debtors effectively waived their exemption claim. The *Yarber* court explained that because the Code does not define the term "voluntary," its interpretation varies depending on the facts presented. 522 B.R. at 330. The court compared two extremes—a voluntary grant of a security interest in a debtor's property versus an involuntary payment to a creditor to obtain release of a wage garnishment. With that spectrum in mind, the court concluded that the essential involuntariness of a

transfer stemming from the threat of incarceration was even more compelling than an involuntary transfer in a garnishment case. Because there was nothing about the transfer of the bail bond deposit that was voluntary, other than the fact that the debtors made it, the *Yarber* court held that transferring the deposit to the sheriff's office in order to keep the debtor from being incarcerated on a criminal claim did not constitute a "voluntary" transfer for purposes of claiming an exemption.

In the instant case, two Calumet County Sheriff Deputies arrived at Mr. Schmitt's home unannounced and took him into custody with a bench warrant based on a contempt order. Once at the jail they informed him that they wanted "his body or his money," provided only the first page of the warrant, and gave him no other alternatives to satisfy the warrant. Since he had previously mailed the documents required to satisfy the warrant (and did not realize that the documents had not been received), Mr. Schmitt saw no other means to secure his release from jail than to pay the judgment amount.

The *Via, Hill* and *Yarber* cases offer different factual scenarios, but each court concluded that an operation of law provoked an involuntary transfer of funds. The cases involving operation of law posing a risk to life or liberty are even closer to Mr. Schmitt's circumstance. In *Hill*, the property seizure order was the result of a legal judgment, and failure to pay would have meant immediate loss not only of the debtor's property but possibly the property of others who stored their items on his land, as well as the bodily threat to his dog. In *Yarber*, the threat of incarceration was the result of legal process, and failure to pay the bail would have meant immediate loss of liberty.

Here, Mr. Schmitt faced a predicament resulting from an operation of law. He thought he had complied with an earlier state court order to produce documents. Whether he was mistaken, or the documents were waylaid, or the bench warrant was issued in error, this Court will never know. But issued it was, and Mr. Schmitt faced immediate severe consequences: loss of liberty or loss of funds. He borrowed money and surrendered funds. As a result, the Court finds that Mr. Schmitt's transfer of funds to the court officer to satisfy

the bench warrant and avoid jail time falls on the involuntary end of the spectrum. The transfer occurred by operation of law and was involuntary for purposes of section 522(g).[5]

Accordingly, if the payment is recovered and becomes property of the estate, the "involuntary" requirement of section 522(g) will not preclude the debtor from claiming the payment as exempt. Because the trustee's objection to the debtor's exemption is based solely on sections 522(g) and (h), the trustee's objection is overruled. Nothing in this decision should be interpreted as indicating any ruling on whether the payment may be recovered by the trustee or the debtor under sections 547, 550, or 522(h). The only issue addressed in this decision is the trustee's objection to the debtor's claimed exemption.

The Court will enter a separate order consistent with this decision.

Dated: December 18, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[5] The Court recognizes that the situation Mr. Schmitt faced was presented in coarse language, "your body or your money," but, as tensions and exemptions run together at times, the use of such language is not necessarily coercive *per se*. This decision rests on an "operation of law" analysis, such that the Court need not consider whether the transfer was prompted by duress or coercion. *See, e.g., Hill,* 566 B.R. at 896 n.9.